ALFRED MAURO, JR. *v.* YALE-NEW HAVEN
HOSPITAL ET AL.
(10821)

DUPONT, C. J., LAVERY and SCHALLER, Js.

Argued January 6—decision released June 8, 1993

*Michele C. Lukban,* for the appellant (defendant James Cianciolo).

*Kathryn Calibey* with whom was *James Bartolini,* for the appellee (plaintiff).

DUPONT, C. J. The defendant James Cianciolo[1] appeals from a judgment, rendered after a jury verdict, awarding $107,580 to the plaintiff for injuries resulting from the defendant's medical negligence. On appeal, the defendant claims that the trial court (1) failed to reduce the amount of the jury verdict by the amount received by the plaintiff from joint tort-feasors prior to trial, (2) improperly instructed the jury regarding the necessity of expert testimony on the issue of causation, and (3) misled the jury with its instruction regarding the apportionment of damages. We affirm the judgment of the trial court.

Many of the facts are not in dispute. On the evening of July 20, 1985, the plaintiff was injured when he fell

---

[1] Prior to trial, the case was withdrawn as against all but the defendant James Cianciolo. We will refer in this opinion to Cianciolo as the defendant.

from a second story porch. He was brought to Yale-New Haven Hospital for treatment and was discharged the following morning. Four days later, because of continuing pain in his spine, the plaintiff consulted Kandiah Sritharan, an internist. X rays were taken of the plaintiff by both the hospital and Sritharan. After receiving several physical therapy treatments from Sritharan, without any improvement in his condition, the plaintiff consulted the defendant, a chiropractor, on August 7, 1985. The defendant diagnosed the plaintiff's condition as spastic torticollis and cervical sprain, and over the next two weeks performed several chiropractic treatments on the plaintiff. Prior to treating the plaintiff, the defendant did not review the X rays that had already been taken, nor did he take any new ones. On August 29, 1985, the plaintiff consulted another physician, who diagnosed the plaintiff as having a fracture of the cervical spine. The plaintiff was immediately admitted to the Hospital of St. Raphael and underwent extensive treatment, including the use of a halo vest and a traction tong.

In October, 1986, the plaintiff brought a medical negligence action against Yale-New Haven Hospital, Sritharan and Cianciolo. The claims against the hospital and Sritharan were settled for $62,500 before trial and withdrawn. Subsequently, the plaintiff filed a substitute complaint naming only Cianciolo as the defendant. The case proceeded to trial and the jury returned a verdict in favor of the plaintiff for $107,580. The defendant filed a motion to set aside the verdict and a motion to reduce the verdict, both of which were denied. This appeal followed.

The defendant's first claim concerns the proper application of General Statutes § 52-216a.[2] The defendant

[2] General Statutes § 52-216a provides: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action

contends that § 52-216a mandates that a trial court reduce a jury verdict by the amount of any pretrial settlement. Specifically, the defendant argues that under § 52-216a the amount of a settlement should be added to the verdict amount awarded by the jury, and then, to the extent that sum exceeds the verdict, the verdict would be considered to be excessive. This would be tantamount to mandating the reduction of the verdict by the amount of any prior settlement. The defendant contends that to hold otherwise would constitute more than the one full recovery to which a plaintiff is entitled and would also allow the trial court to invade the fact-finding function of the jury. The plaintiff, however, argues that § 52-216a requires that a trial court first add the jury verdict and any settlement moneys received by a plaintiff and then make a determination whether the total amount is excessive. If a court determines the total amount to be excessive, then the court is required to reduce the jury verdict by that amount.

Section 52-216a was analyzed in *Peck* v. *Jacquemin*, 196 Conn. 53, 491 A.2d 1043 (1985). The *Peck* court stated that "[i]n making its postverdict determination on the issue of any claimed excessiveness [under § 52-216a], the trial court was directed to consider the amount of money paid to a plaintiff as the result of

shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court."

either '[any] agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action.' " Id., 71. According to the statute, the determination as to whether a verdict is excessive must be made "as a matter of law." The court went on to explain that the terms used in the statute, " 'as a matter of law' are legal terms and, absent any legislative intent shown to the contrary, are to be presumed to be used in their legal sense." Id., 70. "As a matter of law," does not import unbridled discretion, but rather requires the application of relevant legal principles; id., 71; including "the time-honored rule that an injured party is entitled to full recovery only once for the harm suffered." Id., 70 n.19, citing *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 95, 92 A. 883 (1915). The court concluded that because the statute requires that the determination of excessiveness be made "as a matter of law," this determination is purely a question of law and does not invade the province of the jury. *Peck* v. *Jacquemin*, supra, 72. Thus, the court interpreted the statute to give the trial court the authority to make a determination of excessiveness based on legal principles and not to mandate an automatic reduction of a jury verdict by a pretrial settlement. The court construed the statute as permitting the verdict to be reduced by amounts received by a plaintiff from other joint tortfeasors only when those additional amounts plus the verdict would produce an excessive amount of damages as a matter of law.

The defendant argues that subsequent case law has changed the rule in *Peck*. The defendant cites *Alfano* v. *Insurance Center of Torrington*, 203 Conn. 607, 525 A.2d 1338 (1987), *Ames* v. *Sears, Roebuck & Co.*, 206 Conn. 16, 536 A.2d 563 (1988), and *Yuzari* v. *Southern Auto Sales*, 688 F. Sup. 825 (D. Conn. 1988), as support for that proposition. A review of these cases does not bear out the defendant's claim. *Alfano* is distin-

guishable from *Peck*. *Peck* involved a jury award for damages for personal injuries while *Alfano* involved a jury award for a fire loss to property.[3] The payment made by another in *Alfano* was not by a joint tortfeasor but by an attorney, arising out of his malpractice for failing to advise the plaintiff of the need for fire insurance. The loss in *Alfano* was readily ascertainable and absolute, and "represent[ed] a legally unassailable determination of fair compensation for the plaintiff's loss . . . ." *Alfano* v. *Insurance Center of Torrington,* supra, 611. Although the amount of the jury award in *Peck* was certain, it was not absolute because it was within a spectrum of possible sums that could be awarded as just damages. *Seymour* v. *Carcia,* 24 Conn. App. 446, 455, 589 A.2d 7 (1991), aff'd, 221 Conn. 473, 604 A.2d 1304 (1992). Because of the nature of personal injuries and the pain and suffering ancillary to the injuries, the amount awarded by a jury is not absolute. The amount of the loss in *Alfano* was fixed, and, therefore, any recovery beyond the jury verdict would necessarily be excessive. Thus, there was no reason for the court in *Alfano* to exercise the limited role given to it by § 52-216a.

The defendant's reliance on *Ames* and *Yuzari* is also misplaced. In *Ames*, the defendant claimed that *Alfano* had changed the application of § 52-216a as articulated in *Peck*. The court in *Ames*, however, refused to address whether *Alfano* had altered *Peck,* stating that the holding of *Alfano* was confined to its particular facts and that the question need not be decided for purposes of determining the issue in *Ames*. The defendant claims, nevertheless, that, because the *Ames* court did not deny

---

[3] The *Alfano* court acknowledges in a footnote that, even if General Statutes § 52-225a had been effective prior to October 1, 1986, it would not apply to *Alfano* because *Alfano* was not a case seeking damages for personal injury or wrongful death. *Alfano* v. *Insurance Center of Torrington,* 203 Conn. 607, 610 n.3, 525 A.2d 1338 (1987).

the assertion that *Alfano* had changed the application of § 52-216a, it must have countenanced the supposed change. The court was not silent on this issue, but indicated that it would not further address the application of § 52-216a as articulated in *Peck* because it was unnecessary and because *Alfano* involved the rectitude of a trial court's order of remittitur "in the circumstances of that case." *Ames* v. *Sears, Roebuck & Co.,* supra, 23.

In *Yuzari,* the federal District Court recognized that *Ames* did not determine whether *Peck* retained its vitality. The court determined instead that, in its opinion, *Alfano* contained a better interpretation of § 52-216a than did *Peck,* but made no effort to distinguish the two cases. *Yuzari* relies for its reasoning on the dissent in *Peck,* rather than on *Alfano* itself. *Yuzari* v. *Southern Auto Sales,* supra, 829. *Yuzari* does not state that the present law in Connecticut has deviated from *Peck,* but opines only that *Peck* should not be the law, finding support in *Alfano.*[4] *Peck* is still valid law when a jury's award involves damages for a personal injury for which the award cannot be determined precisely.[5]

Having determined that the trial court took the proper approach in applying § 52-216a, we must consider whether the trial court correctly concluded that

[4] The interpretation of our state statutes by a federal court is not binding on us. *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 212, 603 A.2d 385 (1992).

[5] The present case involves a request for a remittitur in an action for damages for personal injuries. Had this case involved an additur, the reasoning of *Yuzari,* namely, that the jury verdict is to be taken as the precise total amount of just damages to which the plaintiff is entitled, would be difficult to support. General Statutes § 52-216a provides that if a court concludes that the verdict is inadequate as a matter of law, it may add to it. If the verdict in an action for damages for personal injury is the precise amount due a plaintiff, there would be no way the court could, with or without taking into account prior settlements, conclude that an additur would be necessary.

the jury verdict, when added to the amount of the pretrial settlement, was not excessive. On appeal, the test to be applied is whether the verdict "so shocks the conscience as to compel a reviewing court's conclusion that it was due to partiality, prejudice or mistake." *Martin* v. *Samulis,* 24 Conn. App. 85, 89, 585 A.2d 1225 (1991). The verdict must fall "somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Internal quotation marks omitted.) *Seymour* v. *Carcia,* supra, 455.

In the present case, the trial court, taking into account the pretrial settlement, found that the jury verdict did not shock the conscience and, therefore, was not excessive. In making this determination, the trial court considered several factors. They included the plaintiff's disability, loss of earning capacity, age, lengthy period of disability, pain and suffering, his recuperation in a neck brace and collar, the surgical procedures, and the fact that, had he been treated prior to the displacement of his spine, the halo collar would not have been needed. We conclude that the trial court properly refused to reduce the jury verdict.

The defendant next claims that the trial court failed to instruct the jury that proximate causation must be established by expert testimony. The plaintiff argues that the defendant did not properly preserve the claim in accordance with Practice Book § 315. We agree with the plaintiff and, therefore, do not reach the merits of the defendant's claim.

In order to preserve a claim related to the giving of or failure to give a jury instruction, a party is obligated either to submit a written request to charge covering the matter or to take an exception immediately after the charge is given. See Practice Book § 315. Our review of the record indicates that the defendant's requests to charge did not cover the issue of requiring

expert testimony in order to establish causation. They did include a charge on causation, and, in fact, the trial court's charge to the jury on the issue of causation was similar to the defendant's requested charge.

After the charge was given, the defendant took five exceptions to the charge. None, however, was to the issue of causation. By failing to except, the defendant deprived the trial court of an opportunity to correct the claimed error before the jury began its deliberations. *Berry* v. *Loiseau,* 223 Conn. 786, 814, 614 A.2d 414 (1992). The purpose of taking exceptions immediately after the charge is delivered is to ensure that the trial court has an opportunity to cure any defects or ambiguities in the charge, and "to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) Id.; see Practice Book § 315. Accordingly, because the defendant failed to preserve properly his claim on appeal, we conclude that the claim is not entitled to appellate review.

The defendant also claims that the trial court's charge on the calculation of damages misled the jury. Specifically, the defendant claims that the trial court failed to provide the necessary guidance regarding apportionment of damages and failed to instruct on contributory negligence. The defendant argues that the jury should have been instructed to determine the liability of each of the defendants, and that it should have received instruction as to the proportionate share of damages to be paid as outlined in General Statutes § 52-572h (d).

Our standard of review concerning claims of instructional error is well settled. "[J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper

verdict . . . ." (Citations omitted; internal quotation marks omitted.) *Sullivan* v. *Norwalk,* 28 Conn App. 449, 456, 612 A.2d 114 (1992), quoting *Hall* v. *Burns,* 213 Conn. 446, 475, 569 A.2d 10 (1990). The trial court must adapt its instructions to the issues raised in order to give the jury reasonable guidance in reaching a verdict and not mislead them. *Sullivan* v. *Norwalk,* supra.

Viewing the charge as a whole, we conclude that there is no reasonable possibility that the jury was misled. The charge adequately and clearly instructed the jury how to calculate damages in this case. A charge on the apportionment of damages, as outlined in § 52-572h (d) need not have been given because the negligence in this case arose from acts occurring prior to the enactment of the subsection on apportionment. Furthermore, at the time this case was tried, there was only one defendant and the plaintiff's substituted complaint makes no reference to and claims no damages from any other defendant. The complaint involves the negligence of Cianciolo and of no one else.

The defendant also claims that the trial court failed to instruct the jury on the issue of contributory negligence. The defendant, however, did not assert contributory negligence as a special defense, and, therefore, was not entitled to a charge as to that defense. The defendant did assert as a special defense that the plaintiff aggravated his condition by not complying with the defendant's instructions to maintain bed rest and not to return to work. Accordingly, he requested a mitigation of damages charge because evidence existed that the plaintiff may have failed to enhance his chances for a recovery by disregarding the defendant's advice. He was entitled to such a charge; *Futterleib* v. *Mr. Happy's, Inc.,* 16 Conn. App. 497, 501, 548 A.2d 728 (1988); and the trial court gave it. Not having pleaded

contributory negligence, he was not entitled to a charge regarding it, nor a verdict form that included contributory negligence.

The judgment is affirmed.

In this opinion the other judges concurred.